UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LOWELL GENERAL HOSPITAL,
      Plaintiff,

v.

OPTUMRX, INC.,

      Defendant.

No. 19-cv-11795-LTS

**MEMORANDUM AND ORDER ON PLAINITFF'S MOTION TO COMPEL DEFEDNANT TO COMPLY WITH COURT ORDER**

CABELL, U.S.M.J.

    Under a pharmacy benefit administration agreement ("PBA agreement"), the defendant OptumRx, Inc. ("Optum"), a pharmacy benefit management ("PBM") company, serviced members of the plaintiff Lowell General Hospital's ("LGH") drug benefit plan ("the Plan"). (D. 18, ¶¶ 5, 6) (D. 52, ¶¶ 5, 6). In this regard, Optum initially denied and thereafter approved coverage for certain high-cost speciality drugs for an LGH Plan member known as AB (D. 18, ¶ 17) (D. 52, ¶ 17) to treat AB's "purported diagnosis of hereditary angioedema" ("HAE") (D. 18, ¶ 17). After incurring exorbitant costs, LGH filed suit claiming Optum breached the PBA agreement by, inter alia, improperly approving medically inappropriate drugs in a manner "inconsistent with Optum's own prior authorization guidelines." (D. 18, ¶¶ 17, 19, 21, 23-28).

At present, LGH moves to compel Optum to comply with this court's October 13, 2021 Order ("the Order") by producing custom prior authorization guidelines or criteria ("custom guidelines") used to process claims for HAE medications. (D. 207). Optum contends the Order does not require production of custom guidelines for HAE medications. (D. 211). First, it points out this court extensively questioned LGH's counsel about the relevance of custom guidelines at a hearing on LGH's previous motion to compel ("the prior motion") (D. 155), and the Order, which allowed that motion, "says nothing about any obligation to produce [custom guidelines]." (D. 211). Second, Optum submits custom guidelines are irrelevant because Optum serviced members of LGH's "standard Optum pharmacy benefit plan" using "standard prior authorization guidelines" ("standard guidelines"). (D. 211). For reasons set out below, neither argument has merit, and the motion (D. 207) is allowed.

I.  **BACKGROUND**

By way of background, the prior motion sought custom guidelines and correctly noted that Optum previously produced, inter alia, standard guidelines for specialty drugs to treat HAE. (D. 174, ¶¶ 4-6) (D. 155, p. 2). Optum uses standard guidelines to determine if a requested drug is covered for Optum clients who, like LGH, elect to use standard criteria for their drug benefit plans. Conversely, Optum uses custom guidelines to determine if

a drug is covered for Optum clients using custom criteria under their drug benefit plans. (D. 157-5, pp. 5-6, 8, 11). Optum develops the standard guidelines whereas its clients "define every pathway within the [custom] criteria." (D. 157-5, p. 6). Optum has possession of both standard and custom guidelines for HAE claims and, in fact, keeps them on the same database.[1] (D. 157-5, pp. 5-6).

Turning to the language of the relatively brief Order, it "allowed" (D. 193) (underlining in original) the prior motion (D. 155) "with respect to" four document requests "to the extent the requests seek information relating to the defendant's processing of claims relating to HAE and/or hereditary angioedema. The requested information, at a minimum, bears on the plaintiff's claim for breach of the implied covenant of good faith and fair dealing." (D. 193). The Order prefaced the ruling as well as other rulings by stating "for the reasons either stated or suggested during the [October 7, 2021] hearing, the court rules as follows . . ." (D. 193).

In response to the Order, Optum conducted an additional search for responsive documents. (D. 212, ¶ 3). As a result, it produced

---

[1] Not only does Optum have possession of the guidelines, *see* Fed. R. Civ. P. 34(a)(1), but they are also reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B). In fact, Optum accesses the database to apply standard and custom criteria for determining prior authorization. (D. 157-5, pp. 5-6).

standard prior authorization guidelines for HAE treatments applicable to United Healthcare's plan in effect during the relevant time period, i.e., January 1, 2017 to May 31, 2019. (D. 212, ¶ 4). It did not produce any custom guidelines. (D. 212, ¶ 4). Optum is presently "withholding guidelines for [HAE] medication claims, estimated [at] anywhere between ten to 100 documents," according to statements by Optum's counsel during a meet-and-confer session. (D. 209, ¶ 12).

## II. DISCUSSION

The applicable law is straight forward. When a court "order is clear and unambiguous" on its face, a reviewing court, including a court reviewing its own order, must adopt and enforce the order in accordance with the order's plain meaning. *Negrón-Almeda v. Santiago*, 528 F.3d 15, 23 (1st Cir. 2008) ("when a court's order is clear and unambiguous, neither a party nor a reviewing court can disregard its plain language"). Indeed, even if the clear and unambiguous language does not reflect "the court's recollection of its actual intent," the "court must carry out and enforce the order." *Id.* (citing *United States v. Spallone*, 399 F.3d 415, 421 (2nd Cir. 2005)). A party, such as Optum, faced with clear and unambiguous phraseology cannot "disregard [an order's] plain language" on the basis that the court "'must' have meant" or intended "something different." *Id.*; *see Alstom Caribe,*

4

*Inc. v. George P. Reintjes Co., Inc.*, 484 F.3d 106, 115 (1st Cir. 2007).

The plain language of the Order allowed four document requests. Two of the requests seek "guidelines . . . or similar documents outlining criteria for determining 'medical necessary' [sic] for" certain drugs used to treat HAE. (D. 157-4, 178-3). Optum's Fed. R. Civ. P. 30(b)(6) deponent testified that "prior authorization criteria" is synonymous to "medical necessity criteria." (D. 157-5, pp. 8, 10). Another request seeks "guidelines or standards" for dispensing "drugs for [HAE]," and the other request seeks "guidelines, standards, and similar documentation governing the approval and dispensing of Specialty Drugs."[2] (D. 157-1, 157-2). "[S]tandards," used in this context as a noun rather than an adjective, refers to a standard as opposed to a standard guideline. Regardless, the term "guidelines" is not limited to standard guidelines or custom guidelines. As such, it seeks both types of guidelines. Overall, the language of the requests does not distinguish between custom versus standard guidelines.

---

[2] The applicable request for production defines "Specialty Drugs" as "high-cost prescription medications used to treat complex or chronic conditions such as hereditary angioedema" and three other conditions. (D. 157-1, ¶ 6). In the prior motion, LGH limits the requested production to "the criteria for prescription medications used to treat [HAE], and one additional medication" which "Optum also approved for AB – Xolair." (D. 157-1, n.7) (D. 196, pp. 6-7).

Likewise, in allowing the requests, the Order does not reference either custom guidelines or standard guidelines. Rather, it refers to "claims" without any language limiting claims to those made under drug benefit plans using standard guidelines. Similarly, the term "processing" does not distinguish between reviewing claims under custom versus standard guidelines. In this respect the Order is clear and unambiguous. Optum's argument that the Order does not require it to produce custom guidelines contravenes the plain language of the Order which "<u>allowed</u>" the requests to the extent they seek information relating to the "processing of claims." (D. 193) (underlining in original). In fact, Optum's interpretation renders the language "<u>allowed</u>" meaningless because it allows no more than what Optum already produced, namely, standard guidelines. The fact that Optum produced United Healthcare's standard guidelines in response to the Order does not alter the Order's clear and unambiguous terms.

It is true this court questioned LGH's counsel regarding the relevance of custom guidelines at the hearing. Ultimately, however, this court expressed an understanding of the relevance as Optum not "carrying out" its duties in consistent with industry standards.[3] (D. 196, p. 24). Hence, this court did not state or

---

[3]  This is consistent with the Order's language regarding the implied covenant of good faith and fair dealing claim, which applies to carrying out or performing a contract. *See Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 n.7 (1st Cir. 2017) ("'duty

6

suggest "the reasons" to deny the requests as irrelevant "during the hearing" within the meaning of the Order's prefatory language. (D. 193, p. 1). Optum's argument that the extensive questioning of LGH's counsel combined with the Order's failure to mention custom guidelines means the Order does not encompass custom guidelines (D. 211, pp. 8-9) is therefore incorrect.

In any event, at the time of the hearing and the ruling, this court fully intended the ruling to reach custom criteria for HAE medications for other Optum clients during the relevant time period.[4] The extensive arguments at the hearing from both sides elaborated the parties' arguments, including the custom versus standard criteria as well as the application to HAE medications used by AB to treat HAE. Furthermore, even assuming for purposes of argument the Order is somehow unclear or ambiguous, "a court retains inherent authority to interpret ambiguities." *Spallone*, 399 F.3d at 421. Case law "makes pellucid that the dispositive consideration in interpreting a self-contradictory order—at least where neither construction of the order does more violence to its

---

of good faith and fair dealing concerns the manner of performance' of the contract") (citation omitted); *accord Robert and Ardis James Foundation v. Meyers*, 48 N.E.3d 442, 450 (Mass. 2016).

[4] By allowing all four requests, this court also intended the Order to reach "guidelines . . . concerning or relating to HAE," as is sought in one of the requests, as well guidelines for determining "'medical necess[ity] for [HAE]," as sought in another request. (D. 156-1, p. 9).

7

language than the other—is the issuing judge's intent." *Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 46 (1st Cir. 2006). Here, against the backdrop of the parties' extensive arguments at the hearing, the Order's open-ended language allowing all four requests "relating to the defendant's processing of claims relating to HAE" (D. 193) expressed this court's intent to include custom guidelines regarding the medications at issue.

Optum's relevance argument (D. 211, pp. 2, 10-12) is also not convincing. First, Optum made the same relevance argument in opposing the prior motion. The Order, however, *allowed*, as opposed to denied, the requests. Second, the argument that custom guidelines are not relevant because LGH has a standard drug benefit plan goes against the plain language of the Order. The Order unambiguously rejects the relevancy argument. It states, in no uncertain terms, that "[t]he requested information, at a minimum, *bears* on the plaintiff's claim for breach of the implied covenant of good faith and fair dealing." (D. 193) (emphasis added).

In short, the language of the Order required Optum to produce custom guidelines. Optum is therefore ordered to produce such documents for the relevant time period.

## III. CONCLUSION

In accordance with the foregoing discussion, the motion to compel (D. 207) is **ALLOWED**.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  June 21, 2022